## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHELLE BARNARD,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 17-00290** |
| | : | |
| **THE TRAVELERS HOME AND MARINE** | : | |
| **INSURANCE COMPANY,** | : | |
| **Defendant.** | : | |

**McHUGH, J.**                                                    **February 5, 2018**

### MEMORANDUM

This case involves a claim for underinsured motorist (UIM) benefits. Plaintiff Michelle Barnard has a personal automobile policy with Defendant Travelers Home and Marine Insurance Company. Two vehicles are insured under the policy, creating the option to "stack" benefits, which would aggregate the limits of UIM coverage on both vehicles in the event of a claim, effectively doubling the amount of coverage available. Under Pennsylvania's Motor Vehicle Financial Responsibility Law (MVFRL), a carrier is required to offer stacked benefits when a policy holder purchases insurance, and to secure a written waiver if stacking is rejected. Here, Plaintiff signed a waiver of stacked benefits when the policy was originally issued, but two years later sought a higher level of UIM benefits. Because this transaction specifically involved a request for additional UIM protection, I am persuaded that the language in the statute should be given its plain meaning, and find that case law addressing different kinds of insurance transactions is not controlling here. A written waiver was required, and in its absence the policy is deemed to provide stacked benefits as a matter of law.

## I. Controlling Standard

This Motion is governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as amplified by *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986). When confronted with cross-motions for summary judgment, as is the case here, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Schlegel v. Life Ins. Co. of N. Am.*, 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (quoting 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720 (3d ed. 1998)). Here, the parties' dispute concerns the proper interpretation of an insurance contract, which no party asserts to contain any ambiguous terms, presenting a pure question of law for the Court. *See 401 Fourth St., Inc. v. Inv'rs Ins. Grp.*, 583 Pa. 445, 453, 879 A.2d 166, 170 (2005); *Simon Wrecking Co. v. AIU Ins. Co.*, 2005 WL 396566, at *1 n.1 (E.D. Pa. 2005) (Brody, J.); *Freeth v. Zurich Am. Ins. Co.*, 152 F. Supp. 3d 420, 425 (E.D. Pa. 2015), *aff'd*, 645 F. App'x 169 (3d Cir. 2016); *United Steelworkers of Am., AFL-CIO-CLC v. Rohm & Haas Co.*, 522 F.3d 324, 330 n.7 (3d Cir. 2008).

## II. Pertinent Facts

Plaintiff Michelle Barnard has held automobile insurance coverage with Defendant Travelers since September 2007. When Plaintiff first secured the policy, she had uninsured/underinsured motorist (UIM) coverage limits of $50,000 per person for each of the two vehicles covered. For an insured with more than one vehicle, 75 Pa. Cons. Stat. § 1738 provides that the "stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured." It further states that "[t]he limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the

injured person is an insured." § 1738(a). The section also allows an insured to waive this default requirement, in which case the UIM limits under the policy "shall be the stated limits for the motor vehicle as to which the injured person is an insured." § 1738(b). The statute sets out the conditions under which the insurer must present the insured with an opportunity for a waiver, stating:

> Each named insured *purchasing* uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

§ 1738(c) (emphasis added).

There is no dispute that Plaintiff signed a written waiver of stacked benefits upon initial purchase of her policy, with the result that the maximum she or anyone else insured could recover in UIM benefits was $50,000. If Plaintiff had stacked her UIM benefits at that time, the available UIM coverage would have totaled $100,000 per person. The parties have stipulated that in May 2009, Plaintiff increased her UIM limits to $100,000 per person, and that Travelers did not secure a separate signed waiver of stacking at that time. Travelers therefore contends that the coverage is unstacked.

Plaintiff was later injured in a car accident on June 17, 2016. The third party motorist responsible for the accident maintained insurance coverage with the minimum limit required by law—$15,000—and tendered the full amount. Plaintiff then filed a claim for underinsured motorist coverage with Travelers, which in turn tendered $100,000 in UIM benefits, the per person limit applicable to a single car under Plaintiff's policy.

Barnard rejected this tender on the ground that stacked limits were available by operation of law because of Traveler's failure to secure a written waiver of stacking when she increased the limits of her UIM coverage in 2009. This litigation followed.

## III. Discussion

This case turns on the meaning of the term "purchase" as used by Section 1738(c) of the MVFRL. There is no Pennsylvania case directly on point.[1]

The rules of statutory construction are virtually identical under both state and federal law. Under Pennsylvania's Statutory Construction Act, the goal is to "ascertain and effectuate the intention of the General Assembly," 1 Pa. Cons. Stat. § 1921(a), but in the first instance, plain language controls: "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." § 1921(b); *Pennsylvania Fin. Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 430, 664 A.2d 84, 87 (1995). Federal courts follow similar principles, looking first to the language of the statute. *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001) ("Because it is presumed that Congress expresses its intent through the ordinary meaning of its language, every exercise of statutory interpretation begins with an examination of the plain language of the statute."); *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms.'").

Section 1783 refers to "purchasing uninsured or underinsured coverage for more than one vehicle." On the stipulated facts here, I am persuaded that Plaintiff made a purchase of UIM coverage with limits of $100,000 per person in May 2009. It was a "purchase" in that Plaintiff requested a new, higher limit of UIM coverage, for which Travelers charged a higher premium.

[1] Plaintiff started this action in state court, and it was removed by Travelers. Despite the dearth of Pennsylvania precedent, neither party has suggested that I abstain and remand the case to state court.

With respect to the UIM coverage, Plaintiff's premium as of 2016 was almost double the premium first charged in 2007.

In common usage, to purchase means to buy—to acquire something by paying for it. Travelers contends that the transaction should be characterized as an "alteration" of limits, but that ignores the fact that Plaintiff here paid for a level of UIM insurance that was different from what she had previously purchased, and for which she paid a different and higher premium. As an insurance "product," the May 2009 policy was distinct from the May 2007 version that preceded it. In short, a "plain meaning" analysis of the literal terms of the statute would support the conclusion that an opportunity for a waiver of stacking was required.

The question then becomes whether case law applying the statute compels a different result. Although the issue is a close one, I am not persuaded that the language of the statute can be ignored when the transaction in question specifically involves a change in UIM coverage as compared to some other aspect of the policy. The parties acknowledge that there is no case directly on point, and argue by way of analogy. I am convinced that such case law as there is favors a literal reading of Section 1738 in this context.

Travelers relies heavily upon *Sackett v. Nationwide Mutual Insurance Company*, 596 Pa. 11, 940 A.2d 329 (2007), which is commonly referred to as *Sackett II* because it represented the Supreme Court's reconsideration of an earlier decision considering when a separate waiver of stacking is required. *See Sackett v. Nationwide Mut. Ins. Co.*, 591 Pa. 416, 420, 425, 919 A.2d 194, 197, 199–200 (2007) (*Sackett I*). The *Sackett* cases addressed the situation where there is an existing policy of automobile insurance, and the policy holder purchases a new vehicle. In *Sackett I*, the Court initially held that a separate waiver was required for the newly acquired vehicle. 919 A.2d at 202. The carrier on the losing side sought rehearing, and based largely on

the intervention of the Pennsylvania Insurance Commissioner, the Supreme Court reconsidered. Its specific holding was that "the extension of coverage under an after-acquired-vehicle provision to a vehicle added to a pre-existing multi-vehicle policy is not a new purchase of coverage for purposes of Section 1738(c), and thus, does not trigger an obligation on the part of the insurer to obtain new or supplemental UM/UIM stacking waivers." 940 A.2d at 334. Significantly, however, the Court took pains to note that "[o]ur present holding is confined to the scenario involving the addition of a vehicle to a multi-vehicle policy." *Id*. at 334 n.5.

That explicit limitation on the scope of the Court's modification is understandable, because its change of position was not based on the conclusion that it had erred in construing the statute but rather was a function of public policy concerns not present outside of situations involving newly purchased vehicles. The Insurance Commissioner persuasively argued that *Sackett I* would frustrate the MVFRL's purpose of ensuring mandatory coverage for motorists. The MVFRL generally requires that motorists maintain "financial responsibility" for any vehicle operated or registered, 75 Pa. Cons. Stat. § 1786(a), meaning that the operator must have the "ability to respond in damages" meeting specified minimum amounts for any liability arising from a vehicle accident, § 1702. To ensure compliance with this law, insurers have used "newly acquired vehicle clauses" in insurance contracts to enable a consumer to "extend existing coverage, with the same applicable types of coverage and limits, to new and/or substitute vehicles, with coverage applying automatically upon acquisition," assuming the insured provides timely notice of the acquisition to the insurer. *Sackett II*, 596 Pa. at 15. As the Commissioner explained, *Sackett I* would render newly-acquired-vehicle clauses without effect, thus leaving policyholders without the benefit of a convenient mechanism for extending coverage to a new vehicle.

More telling for purposes of this case is that the Court left *Sackett I* intact under other circumstances. For a policy with terms that expressly make an after-acquired-vehicle clause "finite," the Court explained, *Sackett I* continued to govern. For such a policy, *Sackett I* requires execution of a new stacking waiver "upon the expiration of the automatic coverage" for the initial unstacked terms to remain effective. *Id.* at 19–20; *see also Sackett v. Nationwide Mut. Ins. Co.* (*Sackett III*), 4 A.3d 637, 639 (Pa. Super. 2010) (holding that where the insured added a new car to a policy through an endorsement, and the policy contained a finite after-acquired-vehicle clause, the insurer needed to "secure a new waiver in order to prohibit the [insured] from stacking UIM benefits"). Preservation of the core holding of *Sackett I* supports the conclusion that a carrier is relieved of the statutory obligation to secure a waiver under Section 1738(c) only where there are offsetting considerations created by other sections of the MVFRL.

Significantly, the Pennsylvania Superior Court has recognized the continued vitality of *Sackett I*, holding in two recent cases that when an insured acquires a new vehicle and simultaneously notifies the insurer, the acquisition would not trigger an insurance policy's after-acquired-vehicle clause, meaning that the insurer must provide a new stacking waiver. *See Bumbarger v. Peerless Indem. Ins. Co.*, 93 A.3d 872 (Pa. Super. 2014) (*en banc*); *Pergolese v. Standard Fire Ins. Co.*, 162 A.3d 481, 490, *appeal denied*, 172 A.3d 590 (Pa. 2017) .

The cases that Travelers cites do not involve a direct purchase of UIM coverage, nor do they directly involve Section 1738. Rather, they involve other types of transactions which the insured then attempted to argue had implications for stacking or an insurer's notice requirements. For example, the Pennsylvania Superior Court has held that when the plaintiff increased the *liability* coverage under the policy, the insurer had no obligation to provide the insured a new rejection notice or form. *Smith v. Hartford Ins. Co.*, 849 A.2d 277, 281 (Pa. Super. 2004). *Smith*

relied in part on Section 1791 of the MVFRL, which provides that, when a motorist first applies for coverage, an insurer must give the applicant notice of the company's obligations under Pennsylvania law to offer certain kinds of coverage, including UIM coverage. Section 1791 further provides that "no other notice or rejection shall be required." According to Travelers, this supports its view that no waiver of stacking was required here. But this ignores the fact that Section 1791 makes no mention of stacking, whereas Section 1738 requires a specific written waiver of stacking. It defies reason to suggest that Section 1791 can be read to override the specific requirements of Section 1738 when an insured specifically changes the limits of UIM coverage. The other cases cited by Travelers similarly involve addition of vehicles to a policy or a change in liability limits, not a change in the UIM coverage provided. *Nationwide Mut. Ins. Co. v. Merdjanian*, 2005 WL 545299, at *6 (E.D. Pa. 2005), *aff'd*, 195 F. App'x 78 (3d Cir. 2006); *Allstate Prop. & Cas. Ins. Co. v. Gierlach*, 2015 WL 5286179 (W.D. Pa. 2015); *Tolentino v. State Farm Ins. Co.*, 2015 WL 2208812 (E.D. Pa. 2015); *Cahall v. Ohio Cas. Ins. Co.*, 2015 WL 4407563 (W.D. Pa. 2015); *State Farm Mut. Auto. Ins. Co. v. Hughes*, 438 F. Supp. 2d 526 (E.D. Pa. 2006).

Travelers also places great emphasis on *Rupert v. Liberty Mut. Ins. Co.*, 291 F.3d 243 (3d Cir. 2002), undoubtedly because it is a precedential decision from the Court of Appeals. But the dicta from *Rupert* that Travelers relies upon was explicitly rejected by the Pennsylvania Supreme Court in *Sackett I*. *Rupert* was a case where the named insured on the policy, who had waived stacking, died, and the successor to the policy (her surviving husband) argued that the waiver could not be enforced against him. The Court of Appeals considered Section 1738, and stated, "This language further suggests that insurers' obligation to inform named insureds of their

right to waiver exists only at the time that coverage is initially purchased." *Id.* at 248.[2]  Later, in *Sackett I*, the Pennsylvania Supreme Court not only refused to follow *Rupert*, but explicitly rejected its construction of the statutory language:  "Notably, the Third Circuit decision fails to establish any basis or cite to any authority for its conclusion that the statutory language of Section 1738, which is in the present tense, only applies to purchases that occurred in the past, i.e. at inception."  919 A.2d at 199 n.6.

It is clear therefore that, under *Sackett I*, the obligation to secure a waiver is not limited to the inception of the policy, and equally clear that the principles of *Sackett I* continue to be enforced by Pennsylvania's appellate courts.  In that regard, I find it significant that the Superior Court has enforced *Sackett I* even in the context of after-acquired vehicles added to an existing policy, an area the Insurance Commissioner had identified as one of concern, where the language of the policy did not bring the case within the specific scope of *Sackett II*.  *See Bumbarger*, 93 A.3d 872; *Pergolese*, 162 A.3d 481.

*Shipp v. Phoenix Insurance Company*, 51 A.3d 219 (Pa. Super. 2012), also has significance for its discussion of how Pennsylvania courts have approached Section 1738. Plaintiff in *Shipp* sold a vehicle and replaced it with another he sought to cover under an existing policy where stacking had been waived.  The Court enforced the principles of *Sackett II* and held that a separate waiver was not required.  In doing so, it emphasized that the only change in coverage when the vehicle was added to the policy was the limit for collision coverage (presumably reflecting the value of a newer car), with no change in the UIM coverage. Having reviewed Pennsylvania precedent, Judge Ford Elliott, who was part of the *en banc* majority in

---

[2] It bears mention that the Court of Appeals had certified the case to the Pennsylvania Supreme Court, *Rupert v. Liberty Mut. Ins. Co.*, 566 Pa. 387, 781 A.2d 132 (2001), but it was evenly divided and produced only cursory opinions, leaving both Judge Fuentes in the majority, *Rupert*, 291 F.3d at 244, and Judge Becker in dissent, *id*. at 249, to lament that "we write on quicksand."

*Bumbarger*, and the author of *Pergolese*, observed that "[t]he matter of importance in all of these cases, as well as in Section 1738, pertains only to the UM/UIM coverage, whether it has changed, and whether a new waiver of stacked coverage is required." *Shipp*, 51 A.3d at 224. Travelers is correct that this is dicta, but it is dicta that sensibly describes Pennsylvania case law. Furthermore, the opinion goes on to state that "the UM/UIM coverage available to the [plaintiffs] remained at all times $200,000 stacked, $100,000 unstacked. Since no new insurance coverage was purchased under such circumstances, [the carrier] would not need to re-obtain waiver of stacked coverage . . . ." *Id.* I read this as forming one of the bases for the Court's decision in *Shipp*, deserving of serious consideration as a formulation of Pennsylvania law.

Travelers finally contends that I should consider the policy implications of a decision in Plaintiff's favor, arguing that it will have a negative impact on the insurance marketplace. In support of that position, it submits nothing more than the Brief of the Pennsylvania Insurance Commissioner filed in *Sackett* some eleven years ago. Def.'s Ex. D, ECF No. 10-1 at 103. I am hard-pressed to conclude that conditions in the marketplace at that time shed meaningful light on conditions prevailing today, and Travelers does not attempt to explain how a decision in Barnard's favor would portend widespread disruption. The buying and selling of automobiles is a major engine of commerce and such a frequent occurrence that policies are drafted in recognition of that fact. The volume of requests to change coverage limits in existing policies cannot possibly compare. Beyond that, the concerns raised by the Commissioner did not cause the Supreme Court to vacate *Sackett I*, only to modify it, and *Sackett I* is central to my decision here. More tellingly, the Commissioner did not seek rehearing or seek to intervene in *Bumbarger* (an *en banc* decision), *Pergolese*, or *Shipp*, later decisions on which Plaintiff relies. Nor did the Commissioner join in the carrier's appeal to the Supreme Court in *Pergolese*. As

Plaintiff aptly points out, the MVFRL balanced the competing goals of cost containment with affording the greatest possible coverage to insureds. *See Lucas v. Progressive Cas. Ins. Co.*, 680 A.2d 873, 877 (Pa. Super. 1996). Traveler's vaguely formulated concerns provide no justification for refusing to enforce the statute.

Having considered both the language of the statute, and the available precedent, I conclude that Plaintiff made a purchase of underinsured coverage in 2009, such that a written waiver was required. Plaintiff's Motion for Summary Judgement will be granted and Defendant's Motion for Summary Judgment denied, with an appropriate order reforming the policy.


        <u>     /s/ Gerald Austin McHugh</u>
        United States District Judge